———————————————

No. 13-1703

———————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

LISA McKINNEY,

         Appellant,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

         Appellee.

Appeal from the United States District Court
for the Western District of North Carolina

**APPELLANT'S INITIAL BRIEF**

SARAH H. BOHR
Bohr & Harrington, LLC
2337 Seminole Road
Atlantic Beach, Florida  32233
Telephone:  (904) 246-7603
Facsimile: (904) 246-8884
e-mail:  sarahhbohr@aol.com
Florida Bar Number:  264008

PAUL TOWNSEND McCHESNEY
McChesney & McChesney, PC
188 Alabama Street
Spartanburg, South Carolina 29302
Telephone: (864) 582-7882
Facsimile: (864) 583-3506
E-mail: service@carolina-disability.com

**DISCLOSURE OF CORPORATE AFFILIATIONS
AND OTHER ENTITIES WITH A DIRECT FINANCIAL INTEREST
IN THE LITIGATION**

The following entities have a direct financial interest in the outcome of this litigation:

1.    Carolyn W. Colvin, Commissioner of Social Security;

2.    Sarah H. Bohr, Counsel for Appellant;

3.    Mathew John Del Mastro, Assistant Regional Counsel, Social Security Administration, Counsel for Appellee;

4.    The Honorable Dennis Howell, United States Magistrate Judge;

5.    Jennifer L. Little, Counsel for Appellant;

6.    Paul Townsend McChesney, Counsel for Appellant;

7.    Lisa McKinney, Appellant; and

8.    The Honorable Martin Reidinger, United States District Judge.

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Course of Proceedings and Dispositions Below. . . . . . . . . . . . . . . 2

      B.    Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            1.    Plaintiff's age, education and past work experience . . . . . . . . 4

            2.    Relevant medical evidence. . . . . . . . . . . . . . . . . . . . . . . . . . 4

            3.    Summary of testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I.    THE ALJ COMMITTED REVERSIBLE ERROR BY FAILING
      TO EVALUATE, OR EVEN ADDRESS, MS. McKINNEY'S
      OBESITY AND HALLUX LIMITUS DEFORMITY.. . . . . . . . . . . . . . 15

      A.    Obesity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      B.    Hallux Limitus. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

II.    THE ALJ FAILED TO COMPLY WITH APPLICABLE
      LEGAL STANDARDS IN REJECTING THE OPINIONS OF
      DR. SMOKER, MS. McKINNEY'S TREATING PHYSICIAN. . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# TABLE OF AUTHORITIES

## CASES

*Acevedo ex rel. A.A. v. Astrue*, No. ED CV 09-637-PLA, 2010 WL 1994661
(C.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Allen v. Barnhart,* 357 F.3d 1140 (10th Cir. 2004)... . . . . . . . . . . . . . . . . . . . . . 21

*Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . 23

*Cogdell v. Astrue*, No. 8:10-105, 2010 WL 6243317
(D.S.C. Dec. 20, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*DeLoatche v. Heckler*, 715 F.2d 148 (4th Cir. 1983). . . . . . . . . . . . . . . . . . . . 23-24

*Dominguese v. Massanari*, 172 F. Supp.2d 1087 (E. D. Wis. 2001). . . . . . . . . . 29

*Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . 14, 22

*Hines v. Bowen*, 872 F.2d 56 (4th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Johnson v. Barnhart,* 434 F.3d 650 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . 13, 24

*Martinez v. Astrue*, 630 F.3d 693 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . 16

*McLeod v. Astrue*, 640 F.3d 881 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Meyer v. Astrue*, 662 F. 3d 700 (4th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . 13-14

*Roberts v. Astrue*, No. 2:11-cv-2-FL, 2011 WL 6179272
(E.D.N.C. Nov. 17, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). . . . . . . 21

*Smith v. Schweiker*, 728 F.2d 1158 (8th Cir. 1984)  . . . . . . . . . . . . . . . . . . . . . 27

*Veazey v. Astrue*, Civil No. 6:10–cv-06058, 2011 WL 4500873
(W.D. Ark. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). . . . . . . . . . . . . . . 28

*Woody v. Sec'y of Health and Human Servs.*, 859 F.2d 1156 (3d Cir. 1988). . . . 24

## STATUTES

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 405(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 30

## REGULATIONS

20 C.F.R. § 404.1513 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

20 C.F.R. § 404.1527 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22-23, 28

20 C.F.R. § 404.1567 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

20 C.F.R. § 416.927 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

20 C.F.R. § 416.967 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## OTHER

Social Security Ruling 83-10,1983 WL 31251 (S.S.A. 1983) . . . . . . . . . . . . . . 20

Social Security Ruling 96-2p, 1996 WL 374188 (S.S.A. 1996) . . . . . . . . . . 23, 29

Social Security Ruling 02-01, 2000 WL 628049 (S.S.A. 2000) . . . . . . . . . . 16, 18

## STATEMENT OF JURISDICTION

This appeal is from the Order and Judgment of the United States District Court for the Western District of North Carolina, dated January 25, 2013, which was the subject of a motion under Fed. R. Civ. P. 59(e), resolved as of April 1, 2013, affirming the decision of the Commissioner of Social Security (hereinafter "Commissioner") denying Ms. McKinney's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  (JA 22-29, DE 24; JA 30, DE 25; JA 31-36, DE 29).[1]  The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g), which grants original jurisdiction to the district courts to review a final administrative decision by the Commissioner.

Ms. McKinney filed a timely Notice of Appeal with this Court dated May 27, 2013, entered into the District Court's docket on May 29, 2013.  (JA 37-38; AR 30).[2]  This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 42 U.S.C. § 405(g).  The judgment of the District Court is final except that it may be subject to review in the same manner as a judgment in other civil actions.

---

[1]    The citations to the record will be as follows: "AR" followed by the document number on the district court docket sheet, followed by the page number of document.

[2]    "JA" refers to the Joint Appendix filed separately and "DE" refers to the docket entry number from the district court docket sheet.

## STATEMENT OF THE ISSUES

I.    The ALJ committed reversible error by failing to evaluate, or even address, Ms. McKinney's obesity and hallux limitus deformity.

II.   The ALJ failed to comply with applicable legal standards in rejecting the opinions of Dr. Smoker, Ms. McKinney's treating physician.

## STATEMENT OF THE CASE

### A.    Course of Proceedings and Dispositions Below

This matter arises from Ms. McKinney's application for DIB and SSI benefits filed on April 23, 2008, alleging disability commencing on May 6, 2007, due to asthma, depression, back and leg pain, irritable bowel syndrome, ear problems, and a hiatal hernia. (AR[3] 123-132, 141). Following denial of her claims, both initially and upon reconsideration, Ms. McKinney requested a hearing, which was held on June 18, 2010, before ALJ William T. Overton. (AR 30-50).

In an unfavorable decision dated July 21, 2010, ALJ Overton concluded that Ms. McKinney retained the residual functional capacity ("RFC") to perform light work "that does not involve work around dust and other respiratory irritants and exposure to temperature extremes due to a respiratory impairment; and takes into account an emotional disorder with restrictions regarding the ability to do work related activities consistent with Exhibit 16F." (AR 20) (bolding omitted). Although the ALJ found that Ms. McKinney suffers from severe, non-listing level, medically determinable impairments of asthma, a back disorder, and an affective disorder, and that her "impairments could reasonably be expected to cause the alleged symptoms[,]" he determined that her allegations of disabling "symptoms are not credible to the

---

[3]    "AR" refers to the administrative record, which has been filed separately.

2

extent they are inconsistent with the above residual functional capacity assessment." (AR 16, 22).

Ms. McKinney requested review of the ALJ's hearing decision in August 2010, in support of which she submitted a letter brief. (AR 10, 190-193). Thereafter, in a Notice of Appeals Council Action dated June 9, 2011, the Appeals Council summarily denied the request for review. (AR 4-9). The Appeals Council stated it had "found no reason under our rules to review the ALJ's] decision[.]" (AR 4). Accordingly, the ALJ's decision became the Commissioner's final decision, and a civil action was filed in the United States District Court for the Western District of North Carolina on August 10, 2011. DE-1.

In response to arguments submitted by the parties, United States Magistrate Judge Dennis L. Howell issued a Memorandum and Recommendation ("M&R") dated December 10, 2012, recommending affirming the Commissioner's decision. (JA 9-21, DE 19). In the M&R, the Magistrate Judge concluded that: (1) "the ALJ considered the combined effects of Plaintiff's impairments and adequately explained his determination in the decision"; (2) any error in failing to mention obesity was harmless; (3) any error in failing to address Ms. McKinney's hallux limitus was harmless; and (4) the ALJ properly rejected the opinion of Dr. Smoker, Ms. McKinney's treating physician. *Id.* at 6, 8, 11.

Ms. McKinney filed objections to the M&R on January 10, 2013, in response to which no opposition was submitted. (DE 23). However, in an Order entered on January 25, 2013, the District Court rejected these objections and adopted the M&R. (JA 22-29; DE 24). The Clerk entered judgment on the same date. (AR 30; DE 25).

Ms. McKinney then filed a Motion for Reconsideration, in regard to which a response and reply brief followed. (DE 26; DE 27; DE 28). In an Order dated March 30, 2013, which entered the docket on April 1, 2013, the District Court denied the Motion for Reconsideration. (JA 31-36, DE 29). This appeal followed.

**B.    Statement of Facts.**

**1. Plaintiff's age, education, and work experience**. The Appellant, Ms. McKinney, was born on February 26, 1965. (AR 123). Ms. McKinney has a high school education and worked in product assembly and as a folder. (AR 33-34, 167).

**2. Relevant Medical Evidence**.

**Chad Smoker, M.D.:** Treatment records from Dr. Smoker contained in the record date from November 2003 through April 2010, and reveal treatment for multiple conditions, including asthma, GERD, depression, low back pain, and obesity. (AR 322-387, 430-435, 495-501).

On July 17, 2007, Dr. Smoker evaluated Ms. McKinney for anxiety and radicular pain following a hysterectomy, noted her weight gain was frustrating her, and continued her prescriptions for Paxil and Klonopin. (AR 329). Ms. McKinney also participated in physical therapy from July to September 2007, during which she experienced periods of improvement and worsening. (AR 304-314); *see also* (AR 326) (report to Dr. Smoker that physical therapy was only mildly effective). On July 30, 2007, Dr. Smoker evaluated her after a hospital visit associated with an attempt to wean herself off Klonopin, becoming anxious, and drinking beer. (AR 328). Dr. Smoker noted Ms. McKinney was frightened by the incident. *Id.*

4

On August 9, 2007, Dr. Smoker noted his patient's mood was anxious and her affect tearful. (AR 328). She was again trying to wean herself from Klonopin and was "doing poorly." (AR 328). Dr. Smoker added Robaxin. *Id.* Despite some improvement in her anxiety as of August 13, 2007, Ms. McKinney continued to have tenderness throughout her lumbar musculature. (AR 327); *see also* (AR 326) (note from August 27, 2007 reporting continued severe back pain, tenderness in the lumbar region and over the SI joint).

In March, May, and June 2008, respectively, Dr. Smoker evaluated Ms. McKinney for severe abdominal pain occurring after eating, allergy symptoms and wheezing, and exacerbations of reflux, abdominal pain, low back pain with sciatica along with anxiety. (AR 322-324). In January 2009, Dr. Smoker treated her for worsening chronic low back pain and noted tenderness in the left lumbar region. (AR 435). He prescribed a muscle relaxant. *Id.*

On February 20, 2009, Dr. Smoker opined that Ms. McKinney had a "combination of anxiety disorder and chronic low back pain (unresponsive to physical therapy) that disables her to work." (AR 434). He observed that he had "not found an effective treatment for her low back pain" and that "[a]nxiety flares in work-related situations." *Id.* Less than a week, later Dr. Smoker prescribed Tramadol as she was not receiving relief from Flexeril. (AR 435). He further treated her for asthma exacerbation in May 2009, constipation, back pain, and panic attacks in July 2009, and myalgia and fatigue in August 2009. (AR 431-432). In March 2010, Dr. Smoker evaluated her for constipation and GERD, prescribing medications and testing. (AR 497-498). Worsened anxiety and "shakiness" was noted in April 2010,

and Dr. Smoker started a trial of Lyrica and referred Ms. McKinney to psychiatry. (AR 498).

Dr. Smoker recorded Ms. McKinney's weight at 198 to 224 pounds during the relevant period. *See*, e.g., (AR 323-326, 329) (198-224 lbs), (AR 431-433) (200-212 lbs), (AR 497-501) (200-210 lbs). Dr. Smoker also discussed Ms. McKinney's problems with weight. (AR 348, 375, 369). Dr. Smoker stated in April 2006 that she was doing best when losing weight and taking Wellbutrin, but had subsequently declined, with anxiety believed to be the underlying reason. (AR 347). On February 18, 2010, Dr. Smoker noted that Ms. McKinney had been experiencing "throbbing in her left great toe for several months" and was worse with weight bearing. (AR 497). He perceived nonspecific tenderness on examination and referred her to podiatry. *Id.*

Dr. Smoker completed several forms dated January 15, 2010, setting forth opinions regarding Ms. McKinney's limitations. In a Mental Impairment Questionnaire, Dr. Smoker recounted that he had treated Ms. McKinney frequently since November 2003 for panic attacks and chronic mechanical low back pain, and that she had chronic severe anxiety that was only "marginally controlled" and "easily exacerbated." (AR 470). Dr. Smoker identified signs and symptoms including, among others: appetite disturbance with weight change, decreased energy, difficulty thinking or concentrating, psychomotor agitation or retardation, and emotional lability. (AR 471). Dr. Smoker opined in part that Ms. McKinney would be unable to meet competitive standards in her ability to (1) maintain attention for two hour segments; (2) maintain regular attendance and punctuality; (3) sustain an ordinary

routine without special supervision; (4) work in coordination with or proximity to others without being unduly distracted; and (5) complete a normal workday and workweek without interruptions from psychologically based symptoms. (AR 472). The doctor also opined that she would be seriously limited in areas including her ability to remember work-like procedures and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. *Id.*

Dr. Smoker further specifically opined that Ms. McKinney's psychiatric condition exacerbates her experience of pain, noting that her chronic back and abdominal pain affect, and are affected by, her anxiety. (AR 473). Her difficulties in maintaining concentration, persistence, or pace, as well as social functioning, were described as "marked." *Id.* Dr. Smoker indicated that the presence of increased mental demands or environmental change would cause decompensation, that Ms. McKinney would average more than four absences per month, and that she was not a malingerer. (AR 474-475).

Dr. Smoker also completed a Lumbar Spine Residual Functional Capacity Questionnaire. (AR 476-479). Therein, the physician listed diagnoses of anxiety disorder, asthma, low back pain, GERD, and chronic constipation; noted that Ms. McKinney's activities exacerbate her back pain; described her back and abdominal pain as moderate to severe; and recounted findings of tenderness, muscle spasm, and muscle weakness. (AR 476-477). Dr. Smoker further indicated that emotional factors contribute to the symptoms and limitations and that Ms. McKinney would "frequently" experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks during a

7

typical workday. (AR 477). He estimated that she could sit or stand for fifteen minutes at a time, sit for a total of about four hours, and stand/walk about two hours during an eight-hour workday. (AR 478). Dr. Smoker opined that Ms. McKinney would need to be allowed to change positions at will and take unscheduled breaks every two to three hours for about fifteen minutes each. *Id.* He indicated that she would have both good and bad days, could rarely lift twenty pounds, occasionally lift ten pounds and frequently less, but could never climb ladders and rarely stoop, crouch, or squat. (AR 479). She could occasionally climb stairs or twist. *Id.*

On a Pulmonary Residual Functional Capacity Evaluation, Dr. Smoker stated that Ms. McKinney's pulmonary problems included shortness of breath, chest tightness, wheezing, and episodic acute asthma precipitated by infections, allergens, and stress. (AR 480). These attacks were rated as severe, infrequently causing incapacitation for about a week. (AR 480-481). Regarding work stresses, Dr. Smoker opined that Ms. McKinney could never handle high stress, rarely handle moderate stress, and occasionally handle low stress. (AR 481). However, she would need to avoid all exposure to cigarette smoke and fumes, odors, and gases; avoid even moderate exposure to perfumes, soldering fluxes, solvents and cleaners, and chemicals; and avoid concentrated exposure to extreme cold or heat, humidity, wetness, and dust. (AR 483).

**Dr. Robert L. van Brederode:** On February 26, 2010, Dr. van Brederode, a podiatrist, began treating Ms. McKinney. Dr. van Brederode relayed that the throbbing, radiating pain had begun six months previous and was aggravated by walking. (AR 492). Past treatment of shoe inserts were only somewhat helpful. *Id.*

8

On examination, Dr. van Brederode noted multiple abnormal findings, including limited range of motion and moderate pain on palpation. (AR 493). X-rays revealed moderate spurring and cuneonavicular breach. *Id.* Dr. van Brederode diagnosed hallus limitus and pain, prescribed a temporary orthotic, and administered a cortisone injection. (AR 494).

On follow-up with Dr. van Brederode in March 2010, Ms. McKinney described improvement, but she continued to have moderate pain in the affected joint, with pain also noted on palpation. (AR 491). The treating podiatrist discussed the potential need for surgery. *Id.* In April 2010, "some reduction of pain with use of the orthotic" was reported. (AR 490). However, worsening soreness of her first metatarsophalangeal joint was noted. *Id.* Dr. van Brederode noted "[m]oderate joint contracture, hallux limitus 1st MTPJ with pain on palpation and with joint ROM." *Id.* The podiatrist administered further injections and again discussed the potential necessity of surgical intervention. *Id.* Ms. McKinney reported her foot was feeling "better" as of May 13, 2010. *Id.*

**Anthony G. Carraway, M.D.:** Dr. Carraway, a psychiatrist, examined Ms. McKinney on behalf of DDS on November 24, 2008, and August 24, 2009. (AR 388-391, 426-429). In both of his consultative evaluations, Dr. Carraway indicated Ms. McKinney is obese. (AR 388, 426); *see also* (AR 197) (emergency room record noting obesity). Regarding the 2008 interview, Dr. Carraway noted Ms. McKinney displayed a rather anxious affect and her mood appeared "to be chronically worried." (AR 389). Her intellectual functioning appeared to be "rather low average[,]" she thought there are 51 states in the United States, did not know if the sun is a planet or

a star, and provided serial sevens as "'93, 85.'" (AR 390). Dr. Carraway diagnosed generalized anxiety disorder and early onset dysthymia, and noted ongoing health concerns, chronic anxiety, and chronic depression. (AR 390-391). The psychiatrist opined that Ms. McKinney's "ability to perform simple repetitive tasks and to persist at those tasks primarily would be limited by her objective physical findings as well as by her somatic complaints. Also her overall level of anxiety may cause mild to moderate difficulty with tasks persistence" whereas "[h]er stress tolerance appears to be rather moderately impaired." (AR 391).

During the 2009 evaluation, Ms. McKinney had an anxious presentation and variable speech in terms of both rate and tone. (AR 427). Her thoughts were somewhat circumstantial, believed 1/3 to be greater than 4/5, and "had two misses on random letter testing." (AR 428). In his assessment, Dr. Carraway essentially confirmed the same diagnoses and functional limitations he described the prior year. (AR 429).

**State Agency RFC Assessments**. A Psychiatric Review Technique form ("PRTF") dated January 12, 2009, sets forth opinions that due to Ms. McKinney's anxiety and dysthymia, she experiences moderate difficulties in social functioning and in maintaining concentration, persistence, or pace, and mild restrictions of daily living activities. (AR 398-411). An accompanying Mental Residual Functional Capacity Assessment ("MRFCA") identifies a number of moderate limitations, impacting among other things the abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based

10

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. (AR 412-413). Another PRTF and MRFCA, dated September 14, 2009, set forth many of the same conclusions, but only mild social functioning limitations and no associated restrictions to interacting with the public and supervisors. (AR 436-453)

A Physical Residual Functional Capacity Assessment ("PRFCA") dated January 13, 2009, states conclusions of a capacity for lifting/carrying limited to 50 pounds occasionally and 25 pounds frequently, sitting and standing/walking for 6 hours per workday, and a need to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and the like. (AR 416-423). A second PRFCA, dated October 23, 2009, expresses the same conclusions. (AR 462-469).

**3. Summary of Testimony:**  Represented by counsel, Ms. McKinney and a vocational expert ("VE") testified at the hearing held on June 18, 2010. (AR 30-50). Ms. McKinney testified that she graduated from high school, is married, and last worked at Baxter's "on the pealing . . . dry side." (AR 33). She last worked in May 2007. (AR 36).

Ms. McKinney explained that she has problems with anxiety and panic, which has worsened in recent years. (AR 34, 37). She is being treated for this by her family physician, Dr. Smoker. (AR 36). As a result of her emotional problems, Ms. McKinney is unable to focus and becomes nervous easily. (AR 36, 42). Asked why she was tearful in the waiting room prior to the hearing, she stated she did not know

11

and "[j]ust get[s] nervous[.]" (AR 42). She experiences panic attacks several times a week. (AR 42-43). An attack can be triggered by something like the stress of trying to cook. (AR 43). Ms. McKinney testified that she has trouble sleeping at night and has reduced energy during the day. (AR 43-45). She also has emotional outbursts on a weekly basis. (AR 45).

Ms. McKinney also suffers from asthma, which has attacked and left her hospitalized for about a week at a time. (AR 35). Although she had not been hospitalized recently as of the date of the hearing, she was still experiencing shortness of breath, chest pain, wheezing, and chronic coughing. *Id.*; *see also* (AR 39-40). Further, Ms. McKinney experiences pain in her back and other areas, along with leg numbness. (AR 38, 41, 44). The back pain is aggravated by bending, standing, and sitting. (AR 41). Ms. McKinney testified that she has problems with her feet, has undergone injections, and would later require surgery. (AR 44). Additionally, she suffers from constipation, acid reflux, a hiatal hernia, and irritable bowel syndrome. (AR 38). She explained that "[e]very time I eat I get sick." (AR 46). Her pain also affects her ability to concentrate. (AR 45, 46).

Regarding daily activities, Ms. McKinney stated that she drives, but only short distances. (AR 37). She prepares meals, goes to church on Sundays, and performs household chores but does not "get a lot done in one day" as she does "some chores and then I rest because I can't do it and then I try to cook." (AR 37, 44). Ms. McKinney estimated that she could walk slowly for perhaps 30 minutes, sit for 20-30 minutes, and could stand about ten minutes before her leg goes numb in connection with her back pain. (AR 40-41).

12

The ALJ asked the VE to assume an individual with the residual functional capacity for light work who "must avoid activities around dust and other respiratory irritants and exposure to temperature extremes because of respiratory impairment and finally . . . she has an emotional disorder with restrictions regarding her ability to do work related activities consistent with 16F, part 3." (AR 47); *see* (AR 438) (stating "cmt is restricted to [simple routine repetitive tasks,] can understand and remember simple instructions[,] can maintain attn/conc for 2 hours at a time as required for the performance of simple tasks[,] can interact appro with others[, and] can adapt to routine changes associated with simple tasks"). The VE responded by identifying "some hand packagers, sorters, assemblers, inspectors, hostess or greeters." (AR 47). The VE stated "I don't have the DOT numbers . . . . I get them from United Staff Publishing." (AR 49). The VE further stated that an employer would tolerate one day of absenteeism per month, and that no jobs could be performed accepting the limitations in Dr. Smoker's report. (AR 48).

## C. Standard of Review

The scope of this Court's review encompasses determining whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Meyer v. Astrue*, 662 F. 3d 700, 704 (4th Cir. 2011). Under this limited standard of review, the court will not decide the facts anew, make credibility determinations, or re-weigh the evidence. *Johnson v. Barnhart,* 434 F.3d 650, 653 (4th Cir. 2005).

The substantial evidence test requires that an administrative decision be based on "such relevant evidence as a reasonable mind might accept as adequate to support

13

a conclusion." *Id.* However, in making this determination, the Court will review the record as a whole, including any new evidence incorporated into the administrative record by the Appeals Council. *Meyer*, 662 F. 3d at 704. A decision is not based on substantial evidence if it focuses on certain aspects of the evidence while disregarding other contrary evidence. *See Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) ("This conclusion was not supported by substantial evidence because the record, when read as a whole, reveals no inconsistency" as claimed by the ALJ, who selectively cited evidence.). Further, while an ALJ's factual findings are reviewed for substantial evidence, no deference is owed when determining whether correct legal standards were applied. *Hines v. Bowen*, 872 F.2d 56, 58 (4th Cir. 1989).

## SUMMARY OF THE ARGUMENT

The ALJ rendered a decision in this case that is deficient in at least two important ways. First, the ALJ failed even to mention two conditions, obesity and hallus limitus deformity, in regard to which there is ample record evidence. The ALJ's failure to address Ms. McKinney's obesity violated the Commissioner's own ruling and cannot properly be deemed harmless. Further, Ms. McKinney's testimony regarding her foot problem is corroborated by the objective medical evidence of record, including x-rays. Although the record indicates that this impairment is aggravated by walking, the ALJ ignored it in concluding that Ms. McKinney could engage in the full exertional range of light work (AR 20), which involves the ability to walk and stand for six hours each eight-hour workday. Accordingly, the ALJ was at least required to consider the foot condition and make a reasoned determination as to its duration and impact upon her residual functional capacity.

14

Second, the ALJ failed to properly evaluate the opinion evidence from Dr. Smoker, Ms. McKinney's longtime treating physician. Dr. Smoker furnished many specific opinions regarding Ms. McKinney's functional capabilities, but the ALJ sweepingly rejected them without even addressing much of their content, without considering them in light of the regulatory factors, and without adequately explaining why they were deemed inconsistent with the record as a whole. These errors require remand for proper evaluation and the articulation of an adequate rationale.

This Court should determine that the ALJ's errors, which include errors of law and reasoning that preclude the proper affirmance of the ALJ's decision even without regard to whether substantial evidence to support the decision exists in the record, warrant remand. Therefore, Ms. McKinney respectfully requests that this Court reverse the District Court's decision and remand this case to the District Court with instructions to remand the matter to the Commissioner.

## ARGUMENT

### I. THE ALJ COMMITTED REVERSIBLE ERROR BY FAILING TO EVALUATE, OR EVEN ADDRESS, MS. McKINNEY'S OBESITY AND HALLUX LIMITUS DEFORMITY.

#### A. Obesity

The medical record evidences that Ms. McKinney suffers from obesity. Although she stands at only 5'0" to 5'1" tall, *see* (AR 38), her weight has generally been recorded at 198 to 224 pounds during the relevant period. *See*, e.g., (AR 323-326, 329) (198-224 lbs), (AR 431-433) (200-212 lbs), (AR 497-501) (200-210 lbs). In both of his consultative evaluations, Dr. Caraway indicated Ms. McKinney is obese. (AR 388, 426). Emergency room records also note obesity. (AR 197).

15

Further, Dr. Smoker discussed Ms. McKinney's problems with weight. (AR 348, 375, 369).

Despite this ample evidence of obesity, and the fact that Ms. McKinney was acknowledged by the ALJ as suffering from impairments that can reasonably be expected to be impacted by obesity, the ALJ did not even consider whether Ms. McKinney's obesity constituted a severe impairment and made no mention of it in his assessment of her RFC. (AR 16-24).[4] Social Security Ruling 02-01, 2000 WL 628049 (S.S.A. 2000) "directs an ALJ to consider a claimant's obesity . . . at all stages of the sequential evaluation." Through SSR 02-01, the Commissioner has specifically recognized the combined effects of obesity with other impairments may be greater than what would be expected in the absence of obesity. The Ruling states that obesity can limit both exertional and postural functions and provides that the effects of obesity on these functions must be assessed, and that "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time." The Ruling further indicates the "effects of obesity with other impairments may be greater than might be expected without obesity." Having failed even to mention Ms. McKinney's obesity, the ALJ also failed to reveal consideration of the dictates of this Ruling or application of the proper standard.

---

[4] Even had the ALJ listed Plaintiff's obesity as a severe impairment but failed to consider it properly at subsequent steps, the ALJ would still have committed reversible error. *See, e.g., Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) (branding as the ALJ's "gravest error" the failure to consider the claimant's obesity, which the ALJ "mentioned in passing . . . is a severe impairment").

16

The ALJ's failure to reveal adequate consideration of Ms. McKinney's obesity at any step of the sequential evaluation process (let alone each of them) cannot properly be deemed harmless error. In the court below, the Commissioner conceded that the ALJ failed to address Ms. McKinney's obesity in his decision, but argued that the ALJ having asked her at the "hearing about her height and weight . . . indicates that he did consider her obesity[.]" (DE 17 at 5). This Court should not hold that the ALJ's complete failure to address or make any findings about Ms. McKinney's obesity in his decision is somehow rendered harmless simply by her having testified as to her height and weight. The ALJ gave no indication at the hearing of how he viewed the obesity and in no way supplied the evaluation and findings missing from the written decision.

Nor could the ALJ be considered to have impliedly accounted for obesity by properly deferring to assessments from physicians who sufficiently factored the condition into an opinion as to functional limitations. First, an ALJ cannot be determined to have properly deferred to the conclusions of nonexaminers where the ALJ did not properly evaluate and reject the treating physician evidence. As noted, the ALJ erred in regard to his evaluation of the evidence from the treating physician, Dr. Smoker. This evidence includes a statement apparently drawing a connection between Ms. McKinney's obesity with her anxiety. Dr. Smoker stated in April 2006 that she was doing best when losing weight and taking Wellbutrin, but had subsequently declined, with anxiety believed to be the underlying reason. (AR 347). Moreover, Dr. Smoker rendered detailed opinions regarding Ms. McKinney's functional limitations as a result of her impairments, including anxiety and chronic

17

low back pain and abdominal pain. The ALJ, however, purportedly relied on the conflicting conclusions of nonexamining State agency physicians, without ever properly evaluating the evidence from Dr. Smoker. (AR 23, 423, 469).

In any event, even had the ALJ not erred in his deferral to the conclusions of nonexaminers, remand would be appropriate concerning the ALJ's complete failure to address Ms. McKinney's obesity. The ALJ's error prevents the Court from knowing whether the ALJ complied with the applicable standards in evaluating the claim, including the directives set forth in SSR 02-1p. *Cf., e.g., Roberts v. Astrue*, No. 2:11-cv-2-FL, 2011 WL 6179272 at *3 (E.D.N.C., Nov. 17, 2011) (holding that given the ALJ's lack of explanation remand was warranted "to allow more specific findings with regard to Plaintiff's obesity"). The ALJ's complete failure to consider Ms. McKinney's obesity cannot properly be deemed harmless. Accordingly, this case should be remanded on this basis as well.

## B.    Hallux Limitus

The medical record contains uncontradicted evidence that Ms. McKinney suffers from foot problems including a left hallux limitus deformity. Yet, the ALJ completely failed to consider this condition in his evaluation of Ms. McKinney's severe impairments and residual functional capacity. This error warrants remand.

On February 18, 2010, Dr. Smoker noted that Ms. McKinney had been experiencing "throbbing in her left great toe for several months" and was worse with weight bearing. (AR 497). He perceived nonspecific tenderness on examination and

18

referred her to podiatry. *Id.* On February 26, 2010, Dr. van Brederode, a podiatrist,[5] began treating Ms. McKinney. Dr. van Brederode relayed that the throbbing, radiating pain had begun six months previous and was aggravated by walking. (AR 492). Past treatment of shoe inserts were only somewhat helpful. *Id.* On examination, Dr. van Brederode noted multiple abnormal findings, including limited range of motion and moderate pain on palpation. (AR 493). X-rays revealed moderate spurring and cuneonavicular breach. *Id.* Dr. van Brederode diagnosed hallus limitus and pain, prescribed a temporary orthotic, and administered a cortisone injection. (AR 494).

On follow-up with Dr. van Brederode in March 2010, Ms. McKinney described improvement, but she continued to have moderate pain in the affected joint, with pain also noted on palpation. (AR 491). The treating podiatrist discussed the potential need for surgery. *Id.* In April 2010, "some reduction of pain with use of the orthotic" was reported. (AR 490). However, worsening soreness of her first metatarsophalangeal joint was noted. *Id.* Dr. van Brederode noted "[m]oderate joint contracture, hallux limitus 1ˢᵗ MTPJ with pain on palpation and with joint ROM." *Id.* The podiatrist administered further injections and again discussed the potential necessity of surgical intervention. *Id.*

Although Ms. McKinney reported her foot was feeling "better" as of May 13, 2010, *id.*, it cannot be assumed as a matter of law that a report of improvement indicates her condition had fully resolved and did not need to be considered by the

---

[5]    In matters involving the feet, the opinions of podiatrists are entitled to the same weight as those of medical doctors. 20 C.F.R. § 404.1513(a)(4).

ALJ. To the contrary, Ms. McKinney testified in June 2010 that was still having problems with her feet and would eventually need surgery. (AR 44). This testimony is consistent with the objective medical evidence, and it was incumbent upon the ALJ at least to consider Ms. McKinney's foot condition and make a reasoned determination as to its duration and impact upon her residual functional capacity.

Instead, the ALJ made no mention of Ms. McKinney's foot condition and found she could perform an unrestricted range of light work, which would require the ability to stand and walk for six hours per eight-hour workday.[6] The ALJ's failure to take note of the evidence, which would support greater limitations than he acknowledged and was not considered by the reviewing sources upon whom he relied (having formulated their conclusions before its inclusion in the record), was not harmless as it indicates a substantial likelihood of prejudice. *See, e.g., McLeod v.*

---

[6]     Light work is defined as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.*

20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added); *see also* Social Security Ruling 83-10, 1983 WL 31251 (S.S.A. 1983) (light work entails "a good deal of walking or standing," which is the "primary difference between sedentary and most light jobs").

> In order to be able to frequently lift or carry objects weighing up to 10 pounds which is required to perform light work, an individual must be able to stand or walk, off and on, for approximately six hours out of an 8-hour day: "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10.

*Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 413, which "held that although some features of the record suggested that the error was harmless, others suggested the opposite, and '[g]iven the uncertainties, we believe it is appropriate to remand this case'").  To affirm in such a circumstance would require a court to make factual findings and provide reasoning therefor in the first instance,[7] which is instead the role of the Commissioner at the administrative level.  As the Tenth Circuit has warned, "to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action recognized in *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943) and its progeny." *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004).

## II.    THE ALJ FAILED TO COMPLY WITH APPLICABLE LEGAL STANDARDS IN REJECTING THE OPINIONS OF DR. SMOKER, MS. McKINNEY'S TREATING PHYSICIAN.

The ALJ provided the following evaluation of the opinion evidence from Ms. McKinney's treating physician, Dr. Smoker:

> The undersigned notes Dr. Smoker's opinion in Exhibit 21F.  Dr. Smoker opined, among other things, that the claimant would likely be absent from work more than four days per month and could rarely lift 20 pounds (Exhibit 21F).  The undersigned also notes the forms Dr. Smoker completed whereby he addressed mental allegations (Exhibits 20F and 23F).  The undersigned rejects Dr. Smoker[']s opinions as they are inconsistent with the record as a whole and the objective evidence of record.

(AR 22); *see also* (AR 20-21) ("Dr. Smoker completed a pulmonary form that noted the claimant reported infrequent asthma attacks and respiratory problems[.]  The

---

[7]      Indeed, the lower court herein resorted to finding in the first instance that Ms. McKinney "failed to meet the durational requirement." R-24 at 4.

undersigned accords very little weight to this opinion as it is inconsistent with the record and the objective findings."). This evaluation is plainly inadequate and does not justify the ALJ's wholesale rejection of the detailed opinion evidence from Dr. Smoker. The ALJ barely addressed any of the doctor's opinions and failed to evaluate them in accordance with established legal standards.

The regulations provide that more weight should be granted to the opinions of a treating source because "[t]hese [treating] sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Similarly, the Fourth Circuit has noted that courts typically "accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Hines v. Barnhart*, 453 F. 3d 559, 563 (4th Cir. 2006) (internal quotation marks omitted).

An ALJ must give the opinion of a treating source controlling weight if s/he finds the opinion "well-supported by medically accepted clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.* Even where an ALJ finds a treating doctor's opinion is not "well-supported," the opinion is still entitled to deference, and may not be disregarded:

> Adjudicators must remember that a finding that a treating source
> medical opinion is not well-supported by medically acceptable clinical
> and laboratory diagnostic techniques or is inconsistent with the other

substantial evidence in the case record means only that the opinion is not
entitled to "controlling weight," not that the opinion should be rejected.
Treating source medical opinions are still entitled to deference and must
be weighed using all of the factors provided in 20 CFR 404.1527 and
416.927.  In many cases, a treating source's medical opinion will be
entitled to the greatest weight and should be adopted, even if it does not
meet the test for controlling weight.

Social Security Ruling 96-2p.  Therefore, if the opinion of a treating source is not

accorded controlling weight, an ALJ *must* apply certain factors – namely, the length

of the treatment relationship and the frequency of examination, the nature and extent

of the treatment relationship, supportability of the opinion, consistency of the opinion

with the record as a whole, and the specialization of the treating source - in

determining what weight to give the opinion.  *See* 20 C.F.R. §§ 404.1527(d),

416.927(d).

The Fourth Circuit has held that the opinion of a treating physician is entitled

to great weight, unless there is persuasive contradictory evidence.  *See Coffman v.*

*Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  The ALJ must explain his reasons for

disregarding the opinion of a treating doctor.  *See DeLoatche v. Heckler*, 715 F.2d

148 (4th Cir. 1983). The Commissioner "must present [the reviewing court] with

findings and determinations sufficiently articulated to permit meaningful judicial

review." *Id.* at 150; *see also* SSR 96-2p, 1996 WL 374188 (S.S.A. 1996) (requiring

the ALJ's decision to contain n"specific reasons for the weight given to the treating

source's medical opinion, supported by evidence in the case record, and must be

sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that

weight").  This includes a requirement that the ALJ evaluate each of the factors listed

23

in the regulations. *See also Johnson*, 434 F.3d at 654.

It is apparent the ALJ failed to comply with the applicable standards. Rather than articulating adequate reasoning for refusing to give controlling weight to the opinion evidence, and then proceeding to evaluate it pursuant to the required factors, the ALJ generically proclaimed that Dr. Smoker's opinions are inconsistent with the record as a whole. This is insufficient on its face and does not permit meaningful review. *See DeLoatche*, 715 F.2d at 150; *see also, e.g., Woody v. Sec'y of Health and Human Servs.*, 859 F.2d 1156, 1162 (3d Cir. 1988) (holding that an ALJ's "conclusory language does not permit meaningful review")

Moreover, even had the ALJ identified specific inconsistencies, such would not have automatically justified a wholesale rejection of Dr. Smoker's opinions. As has been correctly observed by a lower court in interpreting Fourth Circuit precedent, "[i]n almost every case, there is some inconsistency which an ALJ may play upon to diminish a treating physician's view." *Cogdell v. Astrue*, No. 8:10-105, 2010 WL 6243317, at *8 (D.S.C. Dec. 20, 2010). To have any meaning at all, the deference owed a treating physician's opinion "does not have force only after the treating opinion is demonstrated to be the lone voice on an issue or without any critics whatsoever. But, even where a treating opinion has proved undeserving of controlling weight, there is a range of other value the ALJ might afford it." *Id.* The ALJ's unqualified rejection of Dr. Smoker's opinions due to the alleged existence of inconsistency with other parts of the record cannot stand.

Further, Dr. Smoker did not merely render a narrow opinion regarding functional limitations in a single area. As summarized below, he furnished a range

24

of detailed opinions.

Dr. Smoker completed several forms on January 15, 2010, setting forth opinions regarding Ms. McKinney's limitations.    In a Mental Impairment Questionnaire, Dr. Smoker recounted that he had treated Ms. McKinney frequently since November 2003 for panic attacks and chronic mechanical low back pain, and that she had chronic severe anxiety that was only "marginally controlled" and "easily exacerbated."  (AR 470).  Dr. Smoker identified signs and symptoms including, among others: appetite disturbance with weight change, decreased energy, difficulty thinking or concentrating, psychomotor agitation or retardation, and emotional lability.  (AR 471).  Dr. Smoker opined in part that Ms. McKinney would be unable to meet competitive standards in her ability to (1) maintain attention for two hour segments; (2) maintain regular attendance and punctuality; (3) sustain an ordinary routine without special supervision; (4) work in coordination with or proximity to others without being unduly distracted; and (5) complete a normal workday and workweek without interruptions from psychologically based symptoms.  (AR 472).  The doctor also opined that she would be seriously limited in areas including her ability to remember work-like procedures and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.  *Id.*

Dr. Smoker further specifically opined that Ms. McKinney's psychiatric condition exacerbates her experience of pain, noting that her chronic back and abdominal pain affect, and are affected by, her anxiety.  (AR 473).  Her difficulties in maintaining concentration, persistence, or pace, as well as social functioning, were described as "marked."  *Id.*  Dr. Smoker indicated that the presence of increased

mental demands or environmental change would cause decompensation, that Ms. McKinney would average more than four absences per month, and that she was not a malingerer. (AR 474-475).

Dr. Smoker also completed a Lumbar Spine Residual Functional Capacity Questionnaire. (AR 476-479). Therein, the physician listed diagnoses of anxiety disorder, asthma, low back pain, GERD, and chronic constipation; noted that Ms. McKinney's activities exacerbate her back pain; described her back and abdominal pain as moderate to severe; and recounted findings of tenderness, muscle spasm, and muscle weakness. (AR 476-477). Dr. Smoker further indicated that emotional factors contribute to the symptoms and limitations and that Ms. McKinney would "frequently" experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks during a typical workday. (AR 477). He estimated that she could sit or stand for fifteen minutes at a time, sit for a total of about four hours, and stand/walk about two hours during an eight-hour workday. (AR 478). Dr. Smoker opined that Ms. McKinney would need to be allowed to change positions at will and take unscheduled breaks every two to three hours for about fifteen minutes each. *Id.* He indicated that she would have both good and bad days, could rarely lift twenty pounds, occasionally lift ten pounds and frequently less, but could never climb ladders and rarely stoop, crouch, or squat. (AR 479). She could occasionally climb stairs or twist. *Id.*

On a Pulmonary Residual Functional Capacity Evaluation, Dr. Smoker stated that Ms. McKinney's pulmonary problems included shortness of breath, chest tightness, wheezing, and episodic acute asthma precipitated by infections, allergens,

and stress. (AR 480). These attacks were rated as severe, infrequently causing incapacitation for about a week. (AR 480-481). Regarding work stresses, Dr. Smoker opined that Ms. McKinney could never handle high stress, rarely handle moderate stress, and occasionally handle low stress. (AR 481). However, she would need to avoid all exposure to cigarette smoke and fumes, odors, and gases; avoid even moderate exposure to perfumes, soldering fluxes, solvents and cleaners, and chemicals; and avoid concentrated exposure to extreme cold or heat, humidity, wetness, and dust. (AR 483).

The ALJ barely addressed any of these opinions, which indisputably indicate limitations beyond those the ALJ acknowledged,[8] and clearly failed to evaluate them in accordance with established legal standards. The ALJ failed to reveal consideration of the opinions in light of the regulatory factors, did not discuss most of the opinions at all, and failed to provide an actual explanation of how they were inconsistent with the objective findings. Contrary to the lower court's assertion that "[t]he ALJ set forth in detail the objective medical evidence in the record that contradicted the assessment of Dr. Smoker[,]" (JA 19, DE 19 at 11) the ALJ's residual functional capacity assessment consists almost entirely of summarization, which is not equivalent to analysis and which certainly does not adequately explain why specific opinions are rejected. *See, e.g., Smith v. Schweiker,* 728 F.2d 1158, 1163 (8th Cir. 1984) (distinguishing between the summarization of evidence and the evaluation of its content); *Veazey v. Astrue*, Civil No. 6:10–cv-06058, 2011 WL

---

[8]    Indeed, the VE testified that, accepting Dr. Smoker's opinion, no jobs could be sustained. (AR 48).

27

4500873, at *4 (W.D. Ark. 2011) ("Instead of evaluating the [regulatory] factors and noting inconsistencies between . . . complaints and the evidence in the record, the ALJ merely summarized the medical records and recited he complied" with his obligations.); *Acevedo ex rel. A.A. v. Astrue*, No. ED CV 09-637-PLA, 2010 WL 1994661, at *5 (C.D. Cal. 2010) (ALJ erred by merely summarizing medical evidence and drawing a conclusion without providing analysis).

The ALJ's errors with regard to his failure to properly evaluate the opinion evidence from Dr. Smoker cannot be deemed harmless. The requirement that an ALJ provide sufficient reasoning when rejecting the opinion of a treating physician is a mandatory procedural protection whose violation cannot be excused even if "there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) (citing opinions from multiple circuits). As the ALJ failed to sufficiently articulate his reasoning for the sweeping rejection of Dr. Smoker's opinions, and failed to evaluate each of the factors identified in the regulations, this case must be remanded.

It is also observed that, while nonexamining sources announced conclusions that differ from Dr. Smoker's opinion, the treating physician's assessments are not inconsistent with the other substantial evidence of record.[9] For instance, the two-

---

[9]At issue is whether the other evidence is "not inconsistent" with the opinion of the treating medical provider; not that it has to be the same. *See* 20 C.F.R. § 404.1527(d)(2) (stating that the findings of the treating physician as to the severity of an impairment be accorded controlling weight if they are well-supported by medically accepted clinical and laboratory diagnostic techniques and are "not inconsistent"with the other substantial evidence in the record). As one court noted:

time examining psychiatrist, Dr. Carraway, reported multiple mental abnormalities.

In his evaluations, Dr. Carraway noted variously that Ms. McKinney: (1) displayed

an anxious affect; (2) her mood appeared "to be chronically worried"; (3) thought

there are 51 states in the United States; (4) did not know if the sun is a planet or a

---

this is not merely a semantic issue. The 'not inconsistent' standard presumes the opinion's prominence and requires the ALJ to search the record for inconsistent evidence in order to give the treating source's opinion less than controlling weight.

*Dominguese v. Massanari*, 172 F. Supp.2d 1087, 1100 (E. D. Wis. 2001). Similarly, Social Security Ruling 96-2p discusses the "not inconsistent" standard and explains that:

Not inconsistent. This is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion.

Whether a medical opinion is "not inconsistent" with the other substantial evidence is a judgment that adjudicators must make in each case. Sometimes, there will be an obvious inconsistency between the opinion and the other substantial evidence; for example, when a treating source's report contains an opinion that the individual is significantly limited in the ability to do work-related activities, but the opinion is inconsistent with the statements of the individual's spouse about the individual's actual activities, or when two medical sources provide inconsistent medical opinions about the same issue. At other times, the inconsistency will be less obvious and require knowledge about, or insight into, what the evidence means. In this regard, it is especially important to have an understanding of the clinical signs and laboratory findings and any treatment provided to determine whether there is an inconsistency between this evidence and medical opinions about such issues as diagnosis, prognosis (for example, when deciding whether an impairment is expected to last for 12 months), or functional effects. Because the evidence is in medical, not lay, terms and information about these issues may be implied rather than stated, such an inconsistency may not be evident without an understanding of what the clinical signs and laboratory findings signify.

*Id.*

29

star; (5) displayed variable speech in terms of both rate and tone; (6) evidences thoughts that were somewhat circumstantial; (7) believed 1/3 to be greater than 4/5; and (8) "had two misses on random letter testing." (Tr. 388-391, 426-429). Dr. Carraway diagnosed generalized anxiety disorder and early onset dysthymia, and noted ongoing health concerns, chronic anxiety, and chronic depression. (Tr. 390-391, 429). These findings are "not inconsistent" with the opinion of Dr. Smoker.

Further, the psychiatrist opined that Ms. McKinney's "ability to perform simple repetitive tasks and to persist at those tasks primarily would be limited by her objective physical findings as well as by her somatic complaints. Also her overall level of anxiety may cause mild to moderate difficulty with task persistence" whereas "[h]er stress tolerance appears to be rather moderately impaired." (Tr. 391); *see also* (Tr. 429). The terms "moderate" and "moderately" are not defined in Dr. Carraway's evaluations. While Dr. Carraway's conclusions are not identical to those of Dr. Smoker, who had the opportunity to examine Ms. McKinney many times on both good and bad days over a long period, the evaluations from Dr. Carraway actually reinforce the treating physician's views and tend to indicate that Ms. McKinney is more limited than found by the ALJ.

## CONCLUSION

In accordance with the foregoing discussion, this Court should reverse the Commissioner's final decision in accordance with the fourth sentence of 42 U.S.C. § 405(g) and remand this case to the district court, directing that it remand this case to the Commissioner with instructions that benefits be awarded.  Alternatively, this case should be remanded with instructions to:  (1) assess Ms. McKinney's obesity in

accordance with relevant authority; (2) assess her hallus limitus deformity; (3) evaluate the impact of her physical and mental impairments in combination; (4) reconsider her RFC based on all of the evidence of record; and (5) issue a new decision based on substantial evidence and proper legal standards.

Pursuant to Local Rule 34(a), Appellant states that in her opinion oral argument should be heard in this case and asserts that oral argument will significantly aid the Court's decisional process in deciding this case. Specifically, Ms. McKinney suggests that due to the multiple layers of error committed in this case, oral argument may be helpful in the event questions arise with regard to the interaction of two or more these errors.

Respectfully submitted,

s/Sarah H. Bohr
SARAH H. BOHR
Bohr & Harrington, LLC
2337 Seminole Road
Atlantic Beach, Florida 32233
Telephone:  (904) 246-7603
Facsimile: (904) 246-8884
E-mail: sarahhbohr@aol.com
Florida Bar Number:  264008

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND LENGTH LIMITATIONS

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B).  This brief contains 8577 words.  Appellant's brief was printed in a 14 point, proportionally spaced, Times New Roman font.

s/Sarah H. Bohr
Sarah H. Bohr

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 11, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Matthew John Del Mastro, Esquire
Social Security Administration
J.F.K. Federal Building, Room 625
Boston, MA 02203

s/Sarah H. Bohr_____
Sarah H. Bohr

32